The petitioner alleges that the municipal authorities of Cincinnati have granted permission by ordinance duly passed, and by a permit from the board of public service to the defendant, to drive piles in the middle of each of two improved fifty-foot streets, namely, Salim avenue and Armor Place, as well as along the curb lines and in the sidewalks thereof, which piles are,to support a wooden.overhead trestle for the carriage of the defendant’s trains; that said piles are a continuing nuisance and are not necessary in said places for the purposes of constructing and operating a steam railroad, by reason of which said petitioner prays for a permanent restraining order against the defendant from placing any piles, piers, stays or supports in said Salim-avenue or said Armor Place or in the sidewalks thereof, and a mandatory order for the removal of said obstructions in the streets wherever they have already been placed.
A temporary restraining order was granted by the court, and the hearing now is upon its dissolution or its permanency. No question was raised as to the right of the plaintiff to sue as a tax-payer. Section 1777 of the Revised Statutes provides that when a municipal corporation abuses its corporate powers, or enters into any contract in contravention of the laws of the state, the city solicitor may apply for an order of injunction, and Section 1778 authorizes a tax-payer to institute such proceeding whenever the solicitor upon being requested to do so in writing, refuses.
The question, therefore, confronting us, is: Did the city authorities abuse the city is corporate powers by authorizing the defendant to erect in the middle of said streets and its sidewalks supports for an overhead trestle? For, if so, a permanent restraining order must be granted against the defendant.
Section 2640 provides that “the council shall have the care, supervision and control of all public highways, streets, avenues, alleys, sidewalks, public grounds and bridges, within the cor *61 poration, and shall cause the same to be kept open and in repair, and free from nuisance.” This section makes council the trustee for the public, to keep streets open and free from nuisance, and “the power to do this can not be granted away, or relinquished, or their exercise suspended, or abridged, except when, and to the extent legislative authority is expressly given to do so; such authority is not given by Section 3283 of the Revised Statutes.”
This is the language of our Supreme Court in the fifth syllabus of its opinion in the ease of Railroad Company v. Defiance, 52 O. S., 262, a case afterward taken to the Supreme Court of the United States (167 U. S., 88), which affirms our Supreme Court, by reiterating “that the legislative power vested in municipal bodies can not be bartered away in such a manner as to disable them from the performance of their public functions,” and “that the removal of obstructions in a street is incidental to the power to keep the street in repair and free from nuisances, if it is necessary for the adequate exercise of that power. ’ ’
It must be admitted that the erection of the structure complained of in the middle of the streets, although but a foot in width, becomes, by reason of its very location, irrespective of its height, a public nuisance and must be abated, unless legislative authority is expressly given to do so. Counsel for defendant relies upon Section 3283 of the Revised Statutes, as giving power to council to grant this permission. But our Supreme Court, in the ease already cited (R. R. Co. v. Defiance) in construing this section, which grants power to a railroad company to use a street or so much thereof as may be necessary for the purposes of its road, has said (p. 309) that this statute does not contemplate the destruction of the street or the cessation of its use by the public, but “on the contrary the statute recognizes the street so burdened with a railroad as' a public street, with all that term imports,” and “by the next section (3284) whenever, in the construction of a railroad, a public road is crossed or diverted from its location, the company is required without unnecessary delay, to place the road “in such condition as not to impair its former usefulness.’ ”
*62 It is contended, however, for the defendant, that the building’ of the structure complained of does not contemplate the destruction of the streets, or impair their usefulness at all; that council, therefore, did not exceed its power in granting permission to the defendant to erect this support for its trestle in the middle of the streets. That this view is untenable, inasmuch as the corporate duty is cast upon council to beep the streets open, and in repair, and free from nuisance, is clearly shown by Section 3337-1 of the Revised Statutes, which makes it unlawful for any corporation, owning or operating any railroad, crossing or that may hereafter cross, over and above any street, less than seventy feet in width, in any city in this state, at an elevation above such street, sufficient to permit persons to pass and repass along such street beneath such railroad dossing, to place or cause to be placed or to suffer or permit to be or remain in such street, beneath such railroad crossing or bridge, any pier or other stay or support for such crossing or bridge. And Section 3337-7 provides a penalty against such railroad company for every day’s neglect to comply with the aforesaid act, recoverable in the name of the city. Counsel for defendant maintains that the only remedy against his client in the case at bar lies in this section, and that plaintiff has no right of action, because “where a new right, or the means of acquiring it, is conferred and an adequate remedy for its invasion is given by the same statute, parties injured are confined to the statutory redress” (15 O. S., 134). This contention would be good if a new right were created, but the right to have its streets open, and free from nuisance, whether support for a railroad bridge, or any other obstruction, has always been vested in the public, and the duty to maintain this right has always been cast upon the council since the formation of our state. The public itself, irrespective of the city authorities, possess this right, and may sue, if the city refuses to do so, as in this case, for its enforcement. And following the rule laid down by Lord Mansfield, that statutes in pari materia are to be taken together as if they were one law, in order to construe a doubtful statute, and for the purpose of arriving at the legislative intent, this statute shows clearly that the acts complained of were considered a *63 public nuisance by the legislative authority of the state in declaring them an offense against the state and making them penal. And it is a well-known maxim of the law, that that which the law prohibits, either in terms, or by affixing a penalty to it, is unlawful. And it will not promote in one form that which it declares wrong in another. A contract, therefore, or a license founded on an act which is prohibited by statute, under a penalty, is void.
Powell & Smiley, Benner & Benner and Galvin & Bauer, for plaintiff.
Peck, Shafer & Peck, contra.
A permanent restraining order, as well as a mandatory order* as prayed for in the petition, must be granted, and a decree' may be drawn accordingly.